## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MANDICH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-975 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Lancaster, District Judge.

### I.      Introduction

John Mandich ("Plaintiff") brings this appeal from the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §1381, *et.seq.* This Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381( c)(3). Pending before the Court for consideration are the parties' cross- motions for summary judgment. For the following reasons, Plaintiff's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

### II.     Procedural Background

Plaintiff filed an application for SSI on June 2, 2004 alleging that he became disabled and unable to work as a result of arthritis, degenerative disc disorder and thoracic outlet on January 1,

1980. (R. at 70-72; 79).[1] Plaintiff's application was initially denied by the Commissioner on October 8, 2004. (R. at 49). Thereafter Plaintiff filed a timely request for a hearing on December 8, 2004. (*R.* at 54). A hearing was held before an administrative law judge ("ALJ") on June 16, 2006. (*R.* at 485- 521). Plaintiff appeared with counsel and testified. Additionally, a vocational expert Mary Beth Kopar, appeared testified in regard to Plaintiff's capacity to work and the availability of jobs in the economy considering his limitations. (R. at 516- 520).

By determination dated August 25, 2006, the ALJ found that Plaintiff was not disabled within the meaning of the SSA for the relevant time period. (R. at 12-17). Plaintiff filed a request for review of the ALJ's determination on October 19, 2006, (R. at 9), which was denied by the Appeals Council by order dated May 8, 2008. (*R.* at 8). Having exhausted his administrative remedies, Plaintiff filed a complaint in this Court on July 14, 2008, seeking judicial review of the final determination of the Commissioner. (Doc. No. 3). Plaintiff filed his motion for summary judgment and brief in support on December 3, 2008. (Doc. Nos. 10-11). The Commissioner likewise filed a motion for summary judgment and brief in support on December 29, 2008. (Doc. Nos. 12-13). Plaintiff filed a reply brief to the Commissioner's motion on January 20, 2009. (Doc. No. 14).

## III.    Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record.    42 U.S.C. §405(g).    The scope of review is limited to determining whether the

---

[1]

Plaintiff had filed two prior applications for SSI in March 1998 and May 2000. (*R.* at 32). A hearing was held in regard to the first application and the ALJ found in his determination dated October 15, 2001 that Plaintiff was not disabled. (*R.* at 43). The second application was initially denied on February 13, 2002. Plaintiff withdrew his request for a hearing and review of that decision. (R. at 46).

Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive") (quoting 42 U.S.C. §405(g)); *Schaudeck v. Commissioner of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "Nor is evidence substantial if it is overwhelmed by other evidence- particularly certain types of evidence (e.g. that offered by treating physicians)- or if it really constitutes not evidence but mere conclusion." *Id.*

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education or work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" *Id.* at 39 (quoting 42 U.S.C. §423(d)(2)(A)).

3

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the SSA. *See* 20 C.F.R. §404.1520. In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §404.1520(b). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §404.1520( c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1521(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to step three and determine whether the claimant's impairment meets or medically equals the criteria for a listed impairment. *See* 20 C.F.R. §404.1520(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. *See* 20 C.F.R. §404.1520(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 36 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. *See* 20 C.F.R. §404.1520(g). In making this determination, the ALJ

4

should consider the claimant's RFC, his or her age, education, and past relevant work experience. *Id.* The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See* 20 C.F.R. §404.1523.

## IV. The ALJ's Decision

In this case, applying the five-step sequential evaluation process, the ALJ's made the following determinations. At step one, the ALJ found that the claimant has not engaged in substantial gainful activity since January 1, 1980. (R. at 14). At step two, the ALJ found that Plaintiff had the following severe impairments during the relevant time period: degenerative disc disease and asthma. *Id.* At this step, the ALJ determined that, while the evidence shows that Plaintiff also has mild osteoarthritis and diagnoses of chronic fatigue syndrome and depression, the objective medical evidence indicates that these impairments are non-severe. (R. at 14-15). At step three of the sequential evaluation process, the ALJ found that neither of Plaintiff's severe impairments (i.e. degenerative disc disease and asthma), nor the combination of impairments meet the requirements or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*R.* at 15).

The ALJ further determined, at step four, that for the relevant time period, Plaintiff had the residual functional capacity to lift/ carry thirty pounds and must avoid concentrated exposure to respiratory irritants, but that he has no limitations in regard to sitting and can stand and walk for extended periods of time. (R. at 15). Therefore, the ALJ determined that Plaintiff has the residual functional capacity to return to past relevant work as an area development consultant. (R. at 16). As such, it was the determination of the ALJ that Plaintiff was not disabled for the relevant time period,

5

beginning June 2, 2004, the date of the SSI application. (*R.* at 16-17).

**V.   Discussion**

Plaintiff offers several arguments in support of his motion for summary judgment. Specifically, Plaintiff contends that the ALJ and Appeals Council improperly disregarded the medical opinion of Plaintiff's treating physicians, namely Dr. Werner K. Brammer and Dr. Linda Humphreys. (Doc. No. 11 at 7). Plaintiff further argues that the ALJ erred in determining that none of Plaintiff's severe impairments or combination of impairments meet the requirements of a listed impairment and in his determination of Plaintiff's residual functional capacity (Doc. No. 11 at 8-11). Plaintiff further argues that the ALJ erred in determining that he has the residual functional capacity to perform past relevant work. He also argues that the ALJ improperly disregarded testimony of the vocational expert and relied on an incomplete hypothetical question in making his determination. (Doc. No. 11 at 10-15). Finally, Plaintiff argues that the determination of the Commissioner should be reversed or in the alternative remanded, insofar as a subsequent application for SSI dated September 30, 2006 resulted in an award of benefits after a hearing before an ALJ. (Doc. No. 11 at 18). The Court finds that Plaintiff's arguments are without merit and that neither reversal nor remand of the Commissioner's determination is appropriate in this case.

*A.   The ALJ Properly Considered the Medical Opinions of Plaintiff's Treating Physicians*

Plaintiff argues that the ALJ failed to properly consider the Pennsylvania Department of Public Welfare Employability Re-Assessment Form completed by Dr. Brammer on Plaintiff's behalf, which indicated that Plaintiff was temporarily disabled for the time period between May 1, 2004 and May 1, 2005 as a result of bilateral arm pain and leg pain. (Doc. No. 11 at 7). Further, Plaintiff argues that the Appeals Council failed to properly consider a questionnaire completed by Dr.

Humphreys, Plaintiff's treating psychiatrist at Glade Run Lutheran Services, which indicated that Plaintiff's mental health impairments are likely to interfere with his ability to maintain successful employment. *Id.*

In response to Plaintiff's arguments, the Commissioner argues that the ALJ properly considered the opinions of Drs. Brammer and Humphreys. (Doc. No. 13 at 12). Furthermore, the Commissioner argues, that the determination of the ALJ is supported by substantial evidence and that evidence presented to the Appeals Council that was not before the ALJ is not properly before this Court. (Doc. No. 13 at 13).

In making a disability determination, the ALJ is required to review, properly consider and weigh all of the medical records provided concerning the claimant's disability claims. *Fargnoli*, 247 F.3d at 42 (citing *Dobrowlsky v. Califano*, 606 F.2d 403, 406-7 (3d Cir. 1979)). In considering the medical evidence, "the ALJ may not make speculative inferences from medical reports." *Plummer*, 186 F.3d at 429 (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). Moreover, the ALJ may not substitute his own opinions for the opinions of examining physicians. *Id.* (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). When the medical evidence of record conflicts, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Id.* (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). The ALJ must consider all the evidence and give some reason for dismissing the evidence he chooses to reject. *Id.* (citing *Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)).

When evaluating medical evidence provided by a treating physician, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation

of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer*, 186 F.3d at 429) (citations omitted). An ALJ may reject a treating physician's assessment, but must do so "'outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* (quoting *Plummer*, 186 F.3f at 429) (citations omitted); 42 U.S.C. §423(d)(1)(A). "If a treating physician's opinion is rejected, the ALJ must consider such factors as the length of the treatment relationship, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, any specialization of the opining physician and other factors the [claimant] raises, in determining how to weigh the physician's opinion." *Sanchez v. Barnhart*, 388 F.Supp. 405, 412 (D.Del. 2005) (citing 20 C.F.R. §404.1527(d)(2)-(6)).

      *1.*     *Opinion of DR. Brammer*

In this case, the ALJ considered Dr. Brammer's in May 2004 that Plaintiff was "temporarily disabled" due to bilateral arm pain. (R. at 16). The ALJ gave little weight to this opinion, however, stating that it was not supported by the evidence of record and that the opinion "is an issue reserved for the Commissioner ..." (R. at 16). First, the Court finds that the ALJ properly evaluated the opinion of Dr. Brammer. In particular, the ALJ evaluated Plaintiff's subjective complaints against the objective medical findings, including MRI reports that indicated no severe problems and evidence that Plaintiff has not been prescribed pain medication for his symptoms. (R. at 16). Additionally, the ALJ considered Plaintiff's ability to function independently and to perform daily tasks such as cooking, cleaning, shopping and driving without issue. (R. at 15). The ALJ noted that, while Plaintiff complains of arm pain and numbness, the objective medical findings as well as Plaintiff's subjective activity reports do not support the position that said arm pain rendered him

temporarily disabled between May 2004 and May 2005. (R. at 15-16). The Court finds that the ALJ applied the appropriate standards in evaluating the opinion of Dr. Brammer.

Moreover, the Court finds that substantial evidence supports the ALJ's determination that Dr. Brammer's opinion is not supported by the medical evidence. In May 2004, Dr. Brammer opined that Plaintiff was "temporarily disabled because [of] continuing symptoms likely requiring surgery." (R. at 211). The medical records indicate that Dr. Brammer referred Plaintiff to Dr. Kang, an orthopedic surgeon, who examined Plaintiff in August 2004. (R. at 142). On examination, Dr. Kang found that Plaintiff had a full cervical range of motion in his back. He also found that Plaintiff had full strength in his upper extremities and his sensation was intact in his upper and lower extremities. *Id.* He noted that Plaintiff was able to touch his touch and extend approximately fifteen inches. *Id.* He was able to heel to talk walk. *Id.* Dr. Kang's opinion was that Plaintiff suffered from chronic pain syndrome. *Id.* He also opined that Plaintiff suffered from minimal degenerative disease in his lumbar spine, and "very mild" cervical spondylosis. *Id.* The records from Dr. Kang indicate that he suggested non-operative treatment with Dr. Brammer for the pain and informed Plaintiff to stay active and avoid tobacco use. *Id.*

Plaintiff was seen by Dr. Goitz, another orthopedic surgeon, in September 2004 in regard to his arm pain. (*R.*at 144). On examination, Dr. Goitz found that Plaintiff had a full range of motion and full strength in his upper extremities. *Id.* Dr. Goitz did note tenderness in his elbow area, but no pain with wrist extension. *Id.* Dr. Goitz found that there was no etiology for all of Plaintiff's symptoms. *Id.* He suggested follow-up with Dr. Scwartz, who had previously suggested carpal tunnel syndrome. (R. at 146-147). However, Dr. Goitz found that Plaintiff's exam was atypical for carpal tunnel syndrome and that a follow up with a neurologist may be beneficial. (*R.* at 146). The

9

objective medical reports from Dr. Kang and Dr. Goitz indicate that Plaintiff's pain did not require surgery, as Dr. Brammer originally suggested. In his determination, the ALJ considered and properly rejected Dr. Brammer's conclusion, as said conclusion is not supported by the medical opinions of Dr. Kang and Dr. Goitz.[2] Therefore, the Court will not remand the determination of the ALJ on this issue.

## 2. *Opinions of DR. Humphreys*

Dr. Humphreys, Plaintiff's treating psychiatrist at Glade Run Lutheran Services, completed a questionnaire on October 20, 2006. (Doc. No. 11 at 7). Plaintiff admits that the questionnaire, completed after the date of the ALJ's determination, was not before the ALJ. *Id.* Rather, the questionnaire was submitted to the Appeals Council, who considered the evidence but found no basis for review of the ALJ's determination based on this evidence. (*R.* at 5-8). Additionally, records from Glade Run Lutheran Services from July 2006 pertaining to a psychiatric evaluation were not before the ALJ. (*R.* at 478-480). These records were also submitted for the first time to the Appeals Council. Plaintiff now argues that this evidence was not properly evaluated by the Appeals Council. (Doc. No. 11 at 7-8).

A social security claimant may introduce "new and material" evidence to the Appeals Council not previously submitted to the ALJ related to the period before the ALJ's determination. 20 C.F.R. §404.970(b). *See Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Appeals Council is required to consider the entire record, including the newly submitted evidence. *Id.*

2

Furthermore, the ALJ could properly reject Dr. Brammer's opinion that Plaintiff was temporarily disabled between May 2004 and May 2005 as the ultimate statutory determination of disability is reserved for the Commissioner. See 20 C.F.R. §404.1520(a).

(quoting 20 C.F.R. §404.970(b)). The Appeals Council is not required to grant review based on the newly acquired evidence. *Matthews*, 239 F.3d at 592. Rather, it will grant review when the ALJ's determination "'is contrary to the weight to the weight of the evidence currently of record.'" *Id.* (quoting 20 C.F.R. § 404.970(b)). When the claimant introduces this evidence to the district court on appeal, the court may remand "but only if the evidence is new and material and if there was good cause shown why it was not previously presented to the ALJ ... ." *Id.* (citing *Keeton v. DHHS*, 21 F.3d 1064, 1067 (11th Cir.1994); *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir.1985)). Indeed, under 42 U.S.C. §405(g), the district court may consider new evidence not presented at the prior proceeding only if "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See also Matthews*, 239 F.3d at 592 (citing *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir.1991)) (internal citations omitted) (holding that, "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence").

Here, Plaintiff has not shown any reason, let alone good cause why the evidence was not brought before the ALJ and after review of the record, the Court sees none. Plaintiff argues that the questionnaire from Dr. Humphreys was not properly considered. He also argues records of a psychiatric evaluation were not properly considered by the Appeals Council. (R. at 478-480, 309-482). However, because it was only submitted before the Appeals Council for the first time, this Court may not consider it in its consideration of the ALJ's determination. *Matthews*, 239 F.3d at 592.

B.    *Substantial Evidence Supports the ALJ's Determination that Plaintiff's Severe Impairments Do Not Meet the Requirements of a Listed Impairment*

In support of his motion, Plaintiff also argues that, based on the records from Glade Run

Lutheran Services, Plaintiff's impairments meet the requirements of the Listings at 12.04 and 12.06. Specifically, Plaintiff argues that the psychiatric evaluation submitted to the Appeals Council on October 15, 2007 and the questionnaires completed by Plaintiff's therapist and Dr. Humphreys submitted to the Appeals Council on January 5, 2007 indicate that Plaintiff meets the requirements of both an affective disorder (at 12.04) and an anxiety disorder (at 12.06). (Doc. No. 11 at 12). However, as discussed above, the Court may not consider evidence brought before the Appeals Council for the first time in determining whether substantial evidence supports the ALJ"s determination. *See Matthews*, 239 F.3d at 592.

In determining whether a claimant's impairments meet or medically equal a listed impairment, the ALJ is required to specify which listings potentially apply and give reasons why those listings are not met or equaled. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-120, n. 2 (3d Cir. 2000). Here, the ALJ considered the medical evidence and determined that Plaintiff's impairments did not meet the requirements of Listing 1.00 Musculoskeletal System or 3.00 Respiratory. (R. at 15). The ALJ did not specifically consider 12.04 and 12.06. However, the ALJ determined Plaintiff's mental health impairments to be non-severe. (R. at 14). As such, the ALJ considered the severe impairments, i.e. degenerative disc disease and asthma, against the appropriate listings and found that they did not meet the requirements.

Moreover, the Court finds that there is substantial evidence to support the ALJ's determination that Plaintiff's mental health impairments were non-severe for the relevant time period. Records from Dr. Brammer from January 2005 and Dr. Evanko from 2005 and 2006 indicate that Plaintiff was diagnosed with depression and prescribed Welbutrin. (R. at 235, 279-281). These records, which were before the ALJ, also indicate that Plaintiff's symptoms decreased as a

result of the Welbutrin. In fact, in March 2006 Plaintiff asked Dr. Evanko to decrease his dosage. (R. at 279). At the hearing before the ALJ in June 2006, Plaintiff indicated that he had not been depressed since March 2006 and had stopped taking Welbutrin. (R. at 500). This evidence, which was before the ALJ, supports the ALJ's determination that Plaintiff's mental health impairments were non-severe for the relevant time period as they indicate that Plaintiff's symptoms were mild and controlled with medication. Further, Plaintiff himself admitted that he no longer wished to be treated for depression with medication because his symptoms were not severe and stopped taking medication.

C.      *Substantial Evidence Supports the ALJ's Determination that Plaintiff has the Residual Functional Capacity to Perform Light Work*

In regard to the ALJ's determination of residual functional capacity, Plaintiff argues that the evidence does not support the determination that Plaintiff has the residual functional capacity to lift/carry thirty pounds and must avoid concentrated exposure to respiratory irritants. (Doc. No. 11 at 9). Specifically, Plaintiff argues that the objective medical evidence, including MRIs, x-rays and other tests resulting in "significant positive findings" establish that Plaintiff suffered from carpal tunnel syndrome. *Id.* Additionally, Plaintiff contends, there is evidence that Plaintiff was treated by two physicians at pain clinics for his "significant" pain. (Doc. No. 11 at 10).[3] In response, the Commissioner argues that the ALJ's determination of residual functional capacity is supported by substantial evidence.

---

[3]     Plaintiff also once again argues that the evidence submitted to the Appeals Council related to Plaintiff's mental health indicates that Plaintiff does not have the residual functional capacity determined by the ALJ. As discussed *supra*, however, this Court may not properly consider that evidence in its determination.

A claimant's residual functional capacity is defined as that which an individual is still able to do despite the limitations cause by his impairment or combination of impairments. *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 121 (3d Cir. 2000)) (quotations omitted); 20 C.F.R. §404.1525(a)(1). In determining a claimant's residual functional capacity, all of the claimant's impairments, including both severe and non-severe, must be considered. 20 C.F.R. §404.1545(a)(2). In addition, the ALJ must consider all of the evidence of record, including both the medical evidence and the claimant's subjective complaints and evidence of activity level, in making a determination regarding a Plaintiff's residual functional capacity. *Burnett*, 220 F.3d at 121 (citing *Plummer*, 186 F.3d at 429; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)). *See also Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (holding that the ALJ must consider all evidence including medical records, descriptions of limitations by the claimant, and observations of the claimant's limitations by others).

After a review of the record that was before the ALJ, the Court finds that substantial evidence supports the ALJ's determination regarding Plaintiff's residual functional capacity. Specifically, the medical evidence evaluated by the ALJ, in addition to Plaintiff's own reports of limitations support the ALJ's determination that Plaintiff has the residual functional capacity to do a limited range of light work. (R. at 15). Additionally, substantial evidence supports the determination that Plaintiff must avoid concentrated exposure to respiratory irritants as a result of his history of asthma and has no limitations of sitting, standing and walking for extended periods of time. *Id.* The objective medical evidence shows that, while Plaintiff had seen several physicians during the relevant time period, none of these physicians advocated aggressive treatment for pain. In particular, Plaintiff saw

14

several specialists, including several orthopedic surgeons in regard to his alleged arm and back pain. Specifically, Dr. Kang, Dr. Goitz, Dr. Balk and Dr. Muzzonigro all examined Plaintiff between 2004 and 2005 and noted that there were no significant objective findings relative to this pain. Dr. Kang found mild degenerative disc disease in the lumbar spine, but did not recommend surgery and suggested pain treatment with his primary physician, Dr. Brammer. (R. at 142). Dr. Goitz found that Plaintiff had a full range of motion and full strength in his upper extremities and normal lower extremities. (R. at 144-145). Dr. Goitz further indicated that he could not find an etiology for Plaintiff's symptoms. (R. at 145). Dr. Balk, like Dr. Goitz agreed that Plaintiff did not appear to have carpal tunnel syndrome. (R. at 276). Dr. Balk indicated that Plaintiff was a difficult patient because of his inability to specify his symptoms. *Id.* Additionally, according to Dr. Balk, Plaintiff would not answer his questions but would continue to discuss possible thoracic outlet syndrome. Id. Dr. Balk did inject Plaintiff with cortisone, but for diagnostic reasons. (R. at 277). Plaintiff's primary care physician Dr. Evanko referred Plaintiff to Dr. Muzzonigro in regard to Plaintiff's reports of back pain. The examination by Dr. Muzzonigro indicated that Plaintiff had a full range of motion and normal sensation. (R. at 287). An x-ray showed mild degenerative disc changes, but Dr. Muzzonigro recommended a conservative treatment course, including a Medrol Dose pack, warm showers and stretching, as well as a home exercise program. (R. at 288).

P        laintiff also saw a neurosurgeon, Dr. Vertosick, in May 2003, who noted that nothing significant was found after Plaintiff had a bone scan and MRI examinations of his brain and spine. In fact, Dr. Vertosick noted that the results of Plaintiff's 2001 and 2003 MRIs were above average for a man of his age. (R. at 207). Additionally, Plaintiff was referred by Dr. Brammer to a thoracic surgeon in June 2004 in regard to a potential diagnosis of thoracic outlet syndrome, but after

examination said found that Plaintiff did not have significant thoracic outlet syndrome. (R. at 121-122).

Moreover, as discussed above, while Plaintiff was diagnosed with depression and treated with Wellbutrin, records from Dr. Brammer and Dr. Evanko indicate that the medication helped and that by June 2006 he felt that he no longer needed to be medicated. This substantial evidence supports the ALJ's determination that Plaintiff's residual functional capacity permitted him to lift and carry thirty pounds and have no limitations on sitting, standing or walking.

## D. The ALJ Properly Relied on the Opinion Testimony of the Vocational Expert

In regard to Plaintiff's residual functional capacity, he further argues that the ALJ posed an incomplete hypothetical question to the vocational expert and that the ALJ failed to properly consider the testimony of the vocational expert. (Doc. No. 11 at 10). Specifically, Plaintiff argues that, while the ALJ did pose one hypothetical question to the vocational expert that accurately portrayed his limitations, the ALJ improperly ignored the vocational expert's answer to that question in his determination. *Id.* The ALJ asked the vocational expert at one point to assume an individual would need to be off task because of pain and would need to take a forty-five minute break in both the morning and afternoon. The vocational expert testified that said limitation would prevent an individual from performing any job at all. According to Plaintiff, this hypothetical properly described Plaintiff's limitations, yet the ALJ ignored the vocational expert's opinion and determined that Plaintiff had the residual functional capacity to perform light work.

In response to this argument, the Commissioner argues that substantial evidence, in particular the medical evidence of record, supports the ALJ's determination that Plaintiff was not limited to the extent that he required forty-five minute breaks in the morning and afternoon. (Doc. No. 13 at

16

18).

When seeking to rely on a hypothetical question posed to a vocational expert, the ALJ must ask a hypothetical question which "reflect[s] all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 820 F.2d 1269 (3d Cir. 1987) (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984)). In this case, the ALJ posed several hypotheticals to the vocational expert based on the medical evidence of record and Plaintiff's testimony at the administrative hearing. (R. at 517-520). The ALJ first asked the vocational expert whether an individual with Plaintiff's educational and work background limited to medium exertion would be capable of performing the functions of an area development consultant. (R. at 517). The vocational expert testified that he could. Id. Further, the ALJ asked whether if this same individual were limited to lifting or carrying thirty pounds he would still be capable of performing that job. Id. The vocational expert again testified that he could. Id. When asked whether this same individual could perform the job functions if he were required to avoid concentrated exposure to dust, the vocational expert testified that he may be limited because construction sites are concentrated areas of dust, but that generally the job description of an area development consultant would not required expsoure to dust and furthermore this individual could perform other medium work. (R. at 517-518). The ALJ then asked the vocational expert to consider whether, if this same individual were required to take forty-five minute breaks in the morning and afternoon, he would still have the capacity to perform the job functions. (R. at 519). The vocational expert testified that he would not be able to perform past work or any other job in the economy. *Id.*

Here, while the ALJ asked a subsequent hypothetical question incorporating the limitations

17

that Plaintiff described, i.e., that he was required to take naps in the morning and afternoon as a result of his pain, as discussed above the objective medical evidence does not support that claim. Indeed, the ALJ asked several hypothetical questions that accurately portrayed the limitations supported by the medical evidence, including Plaintiff's inability to lift or carry more than thirty pounds and the requirement that he avoid exposure to concentrated dust and fumes. The ALJ afforded some credibility to Plaintiff's claims regarding his physical limitations and limited his hypothetical individual to someone who could lift thirty pounds, as opposed to fifty, which was the opinion of the state agency. (R. at 16). However, the ALJ rejected Plaintiff's claim that his physical impairments were so limiting that he had to take lengthy breaks in the morning and afternoon. Said determination is supported by the medical evidence. Moreover, in determining Plaintiff's residual functional capacity, the ALJ considered and accepted the testimony of the vocational expert and found that, as a result of Plaintiff's actual limitations, Plaintiff could perform medium work and past relevant work as an area development consultant. (R. at 16).

## E.    *Substantial Evidence Supports the ALJ's Determination that Plaintiff Could Return to Past Relevant Work*

In further support of his motion for summary judgment, Plaintiff argues that the ALJ erred in determining that Plaintiff could return to his past relevant work as an area development consultant, insofar as said position was a skilled position that Plaintiff was incapable of performing and that the job required concentrated exposure to dust. (Doc. No. 11 at 15-16). In response, the Commissioner argues that the ALJ relied upon the testimony of the vocational expert, and properly determined that Plaintiff had the residual functional capacity to return to his past work. (Doc. No. 13 at 20-21). Furthermore, the Commissioner argues, Plaintiff's argument that he is unskilled to return to past

18

relevant work is without merit, insofar as the vocational expert testified that an individual with Plaintiff's educational and work experience could perform the job functions of a area development consultant. (Doc. No. 13 at 21). Moreover, Plaintiff worked in his previous position as an area development consultant for several months and earned substantial compensation, which indicate that he was capable of successfully performing the jobs functions. *Id.* The Court agrees that Plaintiff's argument that the ALJ improperly determined that he is capable of performing past relevant work is without merit.

At this stage of the sequential evaluation process, the Commissioner must determine whether the claimant is capable of returning to past relevant work. 20 C.F.R. §404.1520. The claimant bears the burden of establishing that he is incapable of performing his past relevant work due to either physical or mental impairment. *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)). Here, substantial evidence supports the ALJ's determination that Plaintiff can perform past relevant work as an area development consultant, as Plaintiff has failed to establish otherwise. The vocational expert testified that, considering Plaintiff educational background and past work experience, he would be capable of returning to work as an area development consultant, as the position is generally sedentary and does not require concentrated exposure to dust. (R. at 517-518). Moreover, the medical evidence supports the opinion that Plaintiff is capable of performing this type of sedentary position where concentrated exposure to dust is not a concern. Furthermore, Plaintiff's claim that is unskilled for the position because he is not an engineer is without merit because the evidence shows that he was capable of maintaining the position for several months and adequately performing the necessary functions. As a result, the Court will affirm the ALJ's determination that Plaintiff is capable of performing past relevant work.

19

F.      *A Subsequent Decision of the Commissioner Determining that Plaintiff is Eligible for Benefits is Not Cause for Remand Under §405(g)*

Finally, Plaintiff argues that the determination of the ALJ should be remanded pursuant to sentence six of §405(g), which states that:

> The Court may ... at any time order additional evidence to be taken before the Commission of Social Security, but only upon a showing that there is new evidence, which is material and that there is good cause for the failure to incorporate such evidence into the record in the prior proceeding.

Plaintiff must also establish that there is a reasonable possibility that this new evidence would change the outcome of the Commissioner's determination. *Id.* Plaintiff once again applied for SSI on September 30, 2006. The application was initially denied, but after a hearing and considering medical evidence *never before this Court or the Appeals Council in this case*, an ALJ determined that Plaintiff was disabled as of the date of the application.[4]

Plaintiff now argues that this case should be remanded so that the ALJ can consider new medical records that formed the basis of that application should be considered by the ALJ on remand, as they were not available prior to the determination of the Appeals Council related to the instant appeal. (Doc. No. 11 at 19).

The Court finds that Plaintiff has not sustained his burden of showing good cause why the medical evidence that he alleges supports his claim here was not before the ALJ simply by the fact that a subsequent application was accepted after an evaluation of these records. As such, remand is not warranted under sentence six of §405(g).

---

4

The Court notes that, while Plaintiff argues that this medical evidence, which includes medical records dated after the Appeals Council determination in this case, is relevant to the application at issue here he has not offered those records as evidence.

20

## VI. Conclusion

Based on the foregoing, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN MANDICH,          )
      Plaintiff,          )
               )
    v.          )          **Civil Action No. 08-975**
               )
MICHAEL J. ASTRUE,          )
COMMISSIONER OF SOCIAL          )
SECURITY,          )
      Defendant.          )

## ORDER

AND NOW, this ____ day of June, 2009, for the reasons set forth in the

accompanying opinion, it is hereby ordered that Plaintiff's Motion for Summary Judgment (Docket

No. 10) is denied and Defendant's Motion for Summary Judgment (Docket No. 12) is granted.


BY THE COURT:


Gary L. Lancaster
United States District Judge


cc:    All counsel of record.